IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| MONTEZ RASHAAD WILLIAMS BEY, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 19-cv-585-NJR |
| JOHN R. BALDWIN, TRAVIS BAYLER, CHRISTINE N. BRANNON, WARDEN HAMILTON, TODD A. PUSTELNIK, HASSAN MARRAR, MARK SCHULTE, ANDREW ZICKERT, and NICOLE GENISIO, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Montez Rashaad Williams Bey, who was an inmate of the Illinois Department of Corrections ("IDOC") at the time he filed his Complaint but has since been released, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff alleges Defendants violated his due process rights under the Fourteenth Amendment when they failed to provide him with a comprehensive re-entry plan and the interest from his inmate trust fund. Plaintiff seeks monetary damages and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for

1

money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Plaintiff makes the following allegations: Sometime after arriving at East Moline Correctional Center on February 8, 2018, Plaintiff read in the ABA Criminal Justice Standards on Treatment of Prisoners that he was entitled to a comprehensive re-entry plan prior to his release from IDOC custody. (Doc. 1, p. 2-3). On October 5, 2018, Plaintiff wrote a grievance asking about his comprehensive re-entry plan but never received a response. (*Id*. at p. 3). He wrote a letter to his counselor asking for his re-entry plan and his counselor responded that his parole plan was still pending in Chicago. On April 29, 2019, Plaintiff sent a request slip to Warden Hamilton asking for assistance with his re-entry plan. (Doc 1, p. 4). The warden's secretary responded to the request indicating that clinical services may have classes to help Plaintiff prepare for release. (*Id.*). He also submitted a grievance setting forth his plan needs. (*Id*. at p. 5).

Plaintiff attended a parole school hosted by Hutton and Andrew Zickert on May 15, 2019. (*Id*. at p. 6). Plaintiff was provided a packet for the class, which he read. Inmates asked questions, and Hutton provided useful information. But Zickert, who informed the class it was his first parole school, was not knowledgeable on the subject. Zickert read the entire packet, Hutton answered questions from inmates, and the class was dismissed. Plaintiff approached Hutton and Zickert after the class, provided him with his self-made re-entry plan, and informed them that he needed help from the counselors on his plan and obtaining financial assistance upon his release. (*Id*. at pp. 6-7). Zickert informed Plaintiff that was not part of his job duties and that Plaintiff's questions about financial assistance were addressed at a previous summit. (*Id*. at p. 7). Hutton stated that he would have to ask his supervisor, Nicole Genisio, about providing Plaintiff with a plan, as he had not

seen a plan like the one presented by Plaintiff nor had an inmate ever asked for such a plan. (*Id*.). Hutton wrote Plaintiff a response on May 20, 2019 informing him that the counselors could not help him with his request, and he would have to seek assistance through the law library. (*Id*. at p. 8).

Plaintiff also sent a grievance about his re-entry plan but Zickert responded on May 16, 2019, informing Plaintiff that he could have attended the re-entry summit on May 8 but Plaintiff declined the invitation. (*Id*. at p. 9). The summit, put together by counselors, invites vendors who provide services to inmates being released and includes multiple topics on loans, housing, jobs, and education. Plaintiff admits that he declined to attend the summit after speaking with other inmates as he believed that it did not meet his needs. The summit was already shown on the prison's movie channel, and Plaintiff did not believe there would be any additional information for him at the summit. (*Id*. at p. 8). Plaintiff also received a counseling summary response from Zickert on May 16, 2019, which indicated that all information about re-entry was presented at the summit and all information about his release was already provided to Plaintiff. (*Id*. at pp. 8-9). Plaintiff does not believe that he has received all information because he has not received a copy of counselors' duties, proof of identification, grievances, and which statutes, codes, rules, and regulations apply to Defendants. Plaintiff alleges that if he is not given a proper re-entry plan, he will not have financial support, clothing, and transportation upon his release from prison. (Doc. 1, p. 13).

Plaintiff believes that the counselors have violated their job duties by not properly preparing a re-entry plan for him. He requested a copy of the counselor's job description from Todd Pustelnik, Zickert, and Hamilton but was told that he was not allowed to have a copy and

3

that the job description was available on the IDOC website. Plaintiff believes the information is being improperly kept from him. (*Id*. at p. 3).

In addition to his requests regarding a re-entry plan, Plaintiff sent requests regarding the interest accumulated in his prison trust fund account. (Doc. 1, p. 13). He received a response from the business office stating that inmates do not receive interest as all interest is paid to the Inmate Benefit Fund ("IBF"). (*Id.*). Plaintiff believes this was improper because the statute does not allow for IBF to keep the interest on his account. Plaintiff sent a request slip to Brannon asking how to receive funds from the IBF. (*Id*. at p. 14). The business office responded that the IBF was used for the benefit of all inmates, but Plaintiff believes he should be able to access the funds because he is indigent. Plaintiff alleges that Defendants violated his due process rights by not providing him with the interest and/or funds from the IBF.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following two counts:

> **Count 1:** **Fourteenth Amendment claim against Defendants for depriving Plaintiff of his comprehensive re-entry plan without due process.**
>
> **Count 2:** **Fourteenth Amendment claim against Defendants for depriving Plaintiff of the interest in his trust fund account without due process.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

### Preliminary Dismissals

Plaintiff lists a number of additional legal claims at the conclusion of his Complaint including: intentional infliction of emotional distress, equal protection, fraud, malfeasance, and "insurance claims". (Doc. 1, pp. 16-18). These claims, however, are no more than conclusory assertions. Without facts to support these legal conclusions, the Court finds that Plaintiff fails to meet the *Twombly* pleading standard. To the extent he attempts to raise these additional claims, they are **DENIED without prejudice**.

### Count 1

To properly allege a procedural due process claim based on the deprivation of a liberty interest, a plaintiff "must sufficiently allege (1) that [he] had a cognizable liberty interest under the Fourteenth Amendment; (2) that [he] was deprived of that liberty interest; (3) and that the deprivation was without due process." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Thus, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Plaintiff fails to allege that he has a protected interest in obtaining a re-entry plan. He fails to point to any statute or regulation entitling him to a re-entry plan. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (state may create liberty interests). Instead, he states that the ABA Criminal Justice Standards indicate he is entitled to a re-entry plan. (Doc. 1, pp. 2-3). He also points to general statutes and regulations requiring employees to "faithfully discharge duties", but

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

none of the statutes or regulations entitle him to a re-entry plan. *See* 730 ILCS 5/3-2-2; 20 Ill. Admin. Code 120.40. Further, while an individual does have a liberty interest in retaining his parole status once paroled, *see Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 781 (7th Cir. 2008), Plaintiff has not alleged that his parole was revoked due to the lack of the re-entry plan. In fact, he is currently on parole. As Plaintiff fails to allege that he was deprived of a protected liberty or property right, the Court **DISMISSES without prejudice** his claim in Count 1.

## Count 2

While prisoners have a due process property interest in their personal funds on deposit in a prison trust fund account, s*ee Wolfe v. Litscher,* No. 03–C–302–C, 2003 WL 23221146, at *2 (W.D. Wis. July 7, 2003) (citing *Campbell v. Miller,* 787 F.2d 217, 222 (7th Cir.1986)), they do not have a property interest in the accumulated interest in that account or the Inmate Benefit Fund, where that interest is deposited. *See Harris v. Randle*, Case No. 10-cv-732-GPM, 2011 WL 132859 (S.D. Ill. Jan. 16, 2011); *Harris v. Ryker*, Case No. 11-cv-133-JPG, 2011 WL 5244682 (S. D. Ill. Nov. 2, 2011); *Evans v. Randle*, Case No. 10-cv-682-GPM, 2011WL 132599 (S.D. Ill. Jan. 15, 2011). As Plaintiff has no property or liberty interest in the interest in his trust fund account or in the Inmate Benefit Fund, he has no claim that Defendants violated his due process rights. Count 2 is, thus, **DISMISSED with prejudice**.

## Motion for Preliminary Injunction

Plaintiff has also filed a Motion for Preliminary Injunction. (Doc. 4). Plaintiff requests an Order from the Court directing the Defendants to provide Plaintiff with a comprehensive re-entry plan and effective clinical services prior to his discharge from IDOC. (*Id*. at p. 7). Since the filing of his Complaint, however, Plaintiff has been released on parole. (*See* Doc. 8). *See also* https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited Aug. 20, 2019).

As Plaintiff is no longer in IDOC custody, the injunctive relief he seeks is now moot. *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008). Accordingly, his motion for a preliminary injunction is **DENIED as moot.**

## Disposition

For the reasons set forth above, Count 2 is **DISMISSED with prejudice**. Count 1 is **DISMISSED without prejudice**.

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before **September 20, 2019**. Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. Fed. R. App. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall count as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

The Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form for use in preparing the First Amended Complaint.

**IT IS SO ORDERED.**

**DATED: 8/23/2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**